Good afternoon, your honors, and may it please the court. My name is Mark Ebert, and I represent Mr. Abdullah Mustafa, the appellant in this case. Your honors, the court Could you speak clearly? The acoustics aren't that great. It's a little hard to hear. I'm sorry. Your honors, the court gets a lot of appeals from defendants who blame their convictions on the incompetence of their lawyers. And many, if not most, of those appeals deal with isolated or minor problems in cases where the evidence is overwhelming. Or errors that could just as easily have been characterized as tactical decisions. This case is a little different for two reasons. The first is that the evidence in this case was anything but overwhelming. There was only one recipient witness, a 12-year-old girl, and in spite of complete and invasive medical exams of both the victim and Mr. Mustafa shortly after the alleged molestation, the state was unable to come up with any physical or medical evidence to corroborate the girl's story. Counsel, I have trouble seeing why the additional things that the blue brief points out counsel could have done or should have done, why any lawyer above the Strickland floor would have done those things, and I also have trouble seeing why it would have Let me focus your attention on a couple of details that bother me. Like on the doctors. You've got one doctor who checks the box that seems contradictory to what another doctor says the narrative statement was. My thought was you got it into evidence that there's this contradiction between the box and the narrative statement, or the lawyer who tried the case got it into evidence. So the defense could take full advantage of that. As for calling the doctor who checked the box, who knows if it would have helped. No matter what that doctor said, it seems as likely to hurt as help. And since you've already got the contradiction in the exhibit, I don't see the point. And the lack of physical evidence, well, if it had been a penis in a vagina, then you could expect the hymen to be broken. But with a finger, there's no reason to look for any physical evidence. There isn't going to be any physical evidence. Well, actually, that's arguable based on the diameter of the finger and the diameter of the opening. It does seem to have been a problem. But to get to the thing that you were asking me about, first of all, I want to point out that this is really part of a pattern of defense counsel being unprepared and not knowing what any of the witnesses were going to say. He didn't know what most of the defense witnesses were going to say when he questioned them, let alone what most of the prosecution witnesses were going to say. Here we have a team of three doctors that examined the patient shortly after the alleged molestation. One of them checked two no boxes on the form. He checked the no finger box. She checked no finger box and she checked no penetration by foreign object box. She checked two boxes saying no penetration. I don't know if foreign object has anything to do with it. Well, they argued about that. But anyway, she checked both no boxes. The other doctor put down a narrative in which she said, well, even though there's no physical or medical evidence, the victim tells me that there was penetration. The problem is that the defense counsel called the wrong doctor. Remember, the prosecution never called the doctor who said that there was penetration. Do you have an affidavit in the habeas record of what the other doctor would have said in testimony if called? We don't have an affidavit, Your Honor. We have the medical report that she, as one of the examining doctors, filled out at the time. The medical report said. Okay. But do you have, as I've said, testimony about what this doctor would have said if called as a witness? There is no additional testimony beyond the report. Why don't you need that under Bragg? Of course not testimony. I would submit, though, that that's the only evidence, non-contradicted evidence, of what the examining doctor would have said.  Why don't you need that affidavit under Bragg? It seems to me you do, because the doctor could well have said, well, while I was talking to her, she didn't mention the finger, but the other doctor talked to her when I was out of the room or I wasn't paying attention or I was filling out forms, and she might have said finger to him. I don't know. And there goes your contradiction. I don't know what the doctor would have said. The doctor might also have said, hey, I just checked the note boxes. I wasn't really paying attention. All kinds of possibilities. You get an affidavit where the doctor that wasn't called says the doctor that was called was just flat wrong. I asked the girl about it, and she said the opposite. Then you've got something to work with under Bragg. Well, we have the record that we have. And the record has only one piece of information as to what she would have said. Anything to stop you from getting an affidavit from the other doctor? Me as appellate counsel coming in after the habeas counsel. In the federal habeas case, was there anything to stop Petitioner from getting an affidavit from the other doctor? I'm not aware of one way or the other. Did Petitioner seek an evidentiary hearing? Yes. Yes. On a hospital form, Judge Pinehill suggested maybe the doctor went down and just checked off no, no, no, no. When I noticed on the form, the doctor changed her mind. She checked off yes and crossed it out and put no under regarding copulation of genitals of victim by assailant, which indicates to me that it was not just willy-nilly going down and checking off no, no, no, no. This is on the hospital form from the exit for records 216 to 220. I was worried about the same thing that Judge Pinehill mentioned. These were pro forma thoughts. But this one indicated to me that the doctor had paid some attention here. Obviously, I agree with that. That's a good observation. But keep in mind, first of all, this is the kind of speculation I don't think that should be engaged in at this level and at this stage of review. I mean, we have the evidence right here as to what her report was at the time. But usually there wouldn't be any need for speculation if a record was made in the habeas court where the doctor who checked no explained what they were doing at the time. Well, I don't – it sounds like I can't persuade you of this, but I would simply say that – I haven't – I have not stated a conclusion or reached one. I'm really commenting on your argument that this is speculation. I'm not speculating by raising the question. I'm asking what procedures the Petitioner followed in the habeas case. The Petitioner did ask for an evidentiary hearing, and it was denied. Is that issue raised in your appeal? I do not believe that it was raised on the appeal, the denial of the evidentiary hearing. And on this doctor, it's hard for me to see where you have – the basic job of the habeas lawyer is to show there's evidence that might well have exonerated the defendant had the jury known of it. And here's the evidence. But in this case, it's hard for me to see where you have any evidence that might have exonerated the defendant except for what the jury already saw, which is this report where the no box is checked on finger. The question is whether counsel was ineffective. We have two doctors examined at the same time. No. The question is whether counsel fell below the Strickland standard and whether there was prejudice. Right. And there were two doctors that examined at the same time. They came to opposite conclusions according to their report on an element of the offense. Do you understand my question? What I'm saying is the jury saw that. This was an exhibited trial, wasn't it? Yes. I'm sure that that was an exhibited trial. I mean, I circled the X in the no box with my pen, and I would have expected the lawyer to put up – I guess if I had been the lawyer, what I would have done is have an enlargement of it on paper, and then I would have kept circling it with a marker. Right. But there it is. The jury already saw it. But he called the wrong doctor. He had two doctors that he could have called on an element of the offense, and he called the one that favored the prosecution and who spent her entire testimony trying to explain away the pro-defense evidence. But we don't know that the other doctor would have done the same thing. Well, the problem that I'm having with – and this is a State habeas case, right, so it's in the deepest standard. The problem that I'm having is that the Petitioner's claim that it's ineffective is somewhat speculative in the sense that you have the box check no. What you don't have is what the doctor would have said if called. And you don't know whether the doctor would have made it worse or made it better. And so that's – the problem I have is, like, if the doctor was called, would the doctor have said she told me there was no finger penetration, or would the doctor have said But that was a summary of my observation of her. But, you know, maybe he would have said something else, and we wouldn't have to be assessing that if there was evidence in the record. The question is, what's the burden under ADIPA right now for the Petitioner? I think if the question is, what would she have said, the uncontradicted evidence is her report at the time. Now, regardless of whether that came from the victim. She would have said I checked that box off. She would have said that that was her conclusion, was that there was no penetration by a finger or by a foreign object. Now, whether that conclusion came from the victim saying there was no penetration or whether that was because of her observation. Does the record show that she interviewed the victim, definitely? She was one of the doctors present and examining, yes. As opposed to doing a physical exam, does the record show whether she had a discussion with the victim? I believe so. I believe that the two doctors were present at the time of the exam. And one of them was doing the examination with the other one standing there, and the other one was checking off boxes. That's my recollection, anyway, of how that happened. Another question. Let me ask. Hughes claimed that Mustafa was prejudiced by the failure of his counsel to interview the alleged victim or the mother. Mm-hmm. What possible testimony could have been elicited that would have helped his case? Well, what he would have found out is what they actually ultimately testified at trial, but that he was unprepared for and surprised by and had nothing to, you know, to rebut. And the biggest one was the prior claim of molestation by the father of the victim, which was investigated by Child Protective Services. They concluded that he may have molested her. I mean, they actually reached a conclusion that there was a basis for this, and then they stopped his visits. He could no longer have unsupervised visits. Other testimony includes that he would have known would have included what the mother's testimony of his wife, his wanting to be called daddy during sexual intercourse. Sorry, I can't think. That Nikki never went back into her room after the molestation. That Mr. Mustafa didn't tell the wife about his prior convictions. And basically what Nikki told her mother after the fact, which in some cases was the same as what she told at trial, but in other important instances or details was not the same, was contradictory. And, again, I just want to say that when you read the record, when you read the entire record, what you see is a lawyer who again and again and again didn't know what the witnesses were going to say. Counsel, when I did criminal defense, I would often try to interview the victims, and usually they wouldn't talk to me. Sometimes. Do we have any evidence that the little girl and the mother would have talked to defense counsel? Do we have an affidavit from them? I would have talked to defense counsel, and here's what I would have told them. There was no affidavit provided below. Usually the DA would tell them, I can't tell you not to talk to defense counsel, but I do tell you you don't have to talk to defense counsel if you don't want to. He's the lawyer for the man who did this to you. So I've been on both sides. I know that's what they do. But I guess I don't see why the presumption should be that a witness who belongs to no side would not talk to defense counsel. Well, for your habeas, usually there's an affidavit. I would have talked to them, and here's what I would have said, something like that. I was not. Okay. So there is no affidavit that I missed. But as far as I know, there's no affidavit on it. There's no affidavit in the record that I missed. You're the attorney here, so you're here to educate me on the record. I'm aware of. Now, let me ask you about this prior molestation. I didn't see how you could get anything into evidence because there was no proof that there ever was a prior molestation that was good enough to get in unless the girl or the mother testified to it, which they didn't. All I've got is the aunt said the 3-year-old girl was masturbating. I thought that was an over-sexualized way to describe a 3-year-old discovering her body. Well, it seemed kind of funny, but maybe it's cooked up to deal with a custody fight. It happens all the time. What I would focus on, Your Honor, was the prosecutor's statement to the court, which is that Child Protective Services conducted an investigation, concluded that there may have been a molestation by the father, and that that was the reason that the father wasn't allowed any more unsupervised visits. May have been is leaves it in the realm of speculation, doesn't it? I think that this is something that he should have investigated. And, again, it's part of a pattern. For example, the defense attorney called two different character witnesses who didn't have any opinion on the character or on the reputation of Mr. Mustafa. Going back to the molestation by the prior father, is there – was there any evidence put into the record in the Federal habeas case that supported that there in fact was a molestation as opposed to may have been? Not beyond what I've just said. Okay. But there was evidence in the record, was there not, that the teenager hated her live-in stepfather, whatever you want to call him. Yes. She definitely didn't like him. She wanted him to be removed from the home. She cried at the wedding. She didn't want to move to Africa to live in a Muslim country. She didn't like not having Christmas anymore because he wouldn't allow it. There was a lot of conflict there, and there was evidence of that, yes. I was kind of struck at how weak the evidence was from what was supposedly not known until trial, like daddy. Gosh, there are so many popular songs where the man in the love relationship is referred to as daddy and the woman in the love relationship is referred to as baby. It seems like an awfully thin reed for child molestation, not important whether you discover it or not. Well, if that were the only thing, that might be true. But, again, I'm saying there's a pattern here of this guy not knowing what any of his witnesses were going to say. What was the confidential information that the defense counsel gave to the prosecutor? I believe you're talking about the fact that he went through one psychologist before he decided on calling Dr. Glover to testify that Mr. Mustafa was not a pedophile. I believe that's right, yes. He had a consultant, and he disclosed to the prosecutor before trial that he chose not to use that consultant and, in fact, had gone and gotten a different psychologist. And certainly that's got to make a statement to the jury that, well, why didn't you use the first psychologist? Would she have said that he was a pedophile? I'd like to save my last three minutes unless there's more questions. I have a question about the prior convictions. What did the trial judge have before him when he found the prior convictions to be true? There's reference to fingerprints. Exactly what fingerprints did the judge have? He didn't have any, Your Honor. That's the problem. That's why I went to the extent of asking the Court to certify the due process issue as well as the ineffective assistance of appellate counsel, because what happened was that the judge, the trial judge ruled based on fingerprints tying Mr. Mustafa to a 12-year-old conviction of somebody named Carl Terone Matthews. But those fingerprints are not in the record. They were not presented to the trial court. There was a fingerprint packet that was given with six or seven sets of fingerprints, which I believe is at pages 278 to 298, approximately, of the excerpt of record. And they all assumed that these fingerprints were in there, and they were not. Counsel, why does it – And that was the only thing that the trial court relied on in finding the prior conviction. Well, why does it matter since Mustafa admitted in his testimony at trial that he was convicted? Well, actually, I think that that admission or that alleged admission was not very specific, and it was not very – it was not specific or reliable enough. Could you tell me where to look at it? Sure. I guess I can't. It was thought I don't have to worry about whether the fingerprint evidence is kind of scrambled because he admits that he's the guy and back then used that name. If you want, I will tell you where the – where in the excerpts of record that is. But, you know, what actually happened here – I want the page number so I can read it.  If you'd rather save it for rebuttal, that's okay. Why don't I look – why don't I look that up while he's talking, and I will get it to you. All right. I do want to. But I think that this is really a case where he was asked a series of prior convictions, and he was never shown the judgment. He was never shown – never told whose name was on that judgment of conviction. So why? And it was – You asked me – you asked me, suppose I'd been convicted of an armed robbery in 1981, and you asked me, were you convicted of armed robbery in 1981? Not much chance I'd say yes if it wasn't true, no matter whether I saw the judgment or used a different name at the time or not. I don't know. I think that what's most likely is that as he was going down that list of convictions, the defendant was not going to argue with him, as he probably was instructed not to by his lawyer. But I know that in this particular case, that particular conviction, he had been denying that for seven or eight years and had taken it up to the Court of Appeals. And the Court of Appeals had said that there is insufficient evidence to show that this person is you. He's denied it for seven or eight years before the trial. He denied it on the trial of the prior convictions in this case. And he didn't deny all these other convictions, which he has. The only thing you can tell from the record is that there was another person with the same common last name who had that conviction. Thank you, counsel. Thank you. Judge Feinfeld, if we could give counsel a few minutes on the rebuttal argument. Of course. I'd appreciate it because it's a pretty complicated case, a lot of issues. Good afternoon, Your Honors. May it please the Court, Glenn Pruden, Deputy Attorney General, on behalf of Warden Newland. The California court's decision that Mustafa's appellate and trial counsel were not ineffective is neither contrary to nor unreasonable to the Strickland standard. And really the only thing that my opponent seems to be arguing today is that he takes exception with the conclusion reached by the state court by applying that standard to the facts and the record. Counsel, we don't have a reasoned opinion, right, just postcard denials? Am I remembering the right case? We handle a lot of them. No, sir. We also have some of the – there is a reasoned opinion on some of the underlying issues on direct appeal. On the Strickland issue. That's correct, sir. How do we review that exactly? Basically, the way it is under this Court's precedent is you look at the state court record and determine whether or not it is objectively reasonable to come to the conclusion that there was no ineffective assistance to counsel. That's what I understood appellant to be arguing, that by counsel not investigating certain things and not calling the doctor who checked off no on the penetration, that that's an objectively unreasonable application of the Strickland standard. That's the issue, right? So was this an objectively unreasonable application of the Strickland standard by saying no ineffective assistance? That's exactly what the issue is before this Court, yes, Your Honor. And I don't think there's any dispute between us as to the fact that Strickland is the proper standard in this case. Can we ask something like, could any reasonable court okay this? I believe that it would be more correct to phrase that, Your Honor, as whether or not it is objectively reasonable for a court to come to the conclusion that the state court came to. What does that mean that's different from what I said? I would just be afraid that if you say any court, that it sort of crosses the line that seemed to bother Justice O'Connor in the Williams v. Taylor opinion. And what I was struck with in her portion, I believe it was Part 2 of that opinion, is that she focused on the need to have it be objectively reasonable. So you might be able to say, could any objectively reasonable court not find a Strickland violation? Yes, Your Honor. And that's the only reason I hesitated with Judge Kleinfeld's phrasing of that issue. With regard to the prior conviction issue, Judge Kleinfeld is exactly right. We have Mr. Mustafa admitting that he was convicted on 24 April of 1984. What's the page number? You can find that, Your Honor, I believe at Excerpts of the Record 5-6. And the question was, on April 24, 1984, were you convicted of robbery, a violation of Penal Code Section 211? And that was in San Francisco, correct? And if the court were to look at the information, the way this prior was alleged, and that's found in the clerk's transcript, the last amended information, I believe, is at 214, and it says that essentially the defendant, Abdul Mustafa, was on or about the 24th day of April, 1984, convicted in San Francisco Superior Court of the crime of a felony to wit, robbery in violation of Penal Code Section 211. There's no mention of a particular case number that would tie it to the abstract of judgment, and we have Mr. Mustafa admitting it. It's no different than if we were in a guilty plea situation with a colloquy with the judge, where the judge asks, you know, do you admit your prior conviction of robbery on the 24th of April, 1984, in San Francisco Superior Court? And he says, yes, I do, Your Honor. And so it's really a red herring whether or not he was shown the abstract of conviction. It makes absolutely no difference. And California law, People v. Harris, 8 Cal App 4th, 104, 1992 case, says that admissions of priors at the guilt phase are perfectly acceptable for sentencing purposes. With regard to the testimony of the victim and the mother, again, as Judge Kleinfeld pointed out, under California law, the district attorney can be required to produce witnesses to the defense counsel, but there's no requirement that the witnesses talk to them. There's absolutely no proof in the record that either Nicole, the mother, or Nikki, the daughter, would have talked with the defense counsel, much less any proof what they would have said. But there's no proof to the contrary. There's a showing that he didn't even try to interview the mother, who might well have testified to a prior with a 3-year-old child, because the mother will call the police in this case. And how can we say that that was not a crucial mistake by the lawyer? He has the burden of proof, Your Honor, in the federal habeas, of coming forth with the evidence to show that there has been some type of prejudice. And absent a showing of proof, this Court is left to simply speculate what would happen, and I would submit that that is not substantial under any case law for carrying his burden of proof in habeas. What if there were an affidavit? I know this isn't in the record from the argument, at least I understand it's not. But what if there was an affidavit from the mother saying, if I had been interviewed or asked on the witness stand, I would have said that she had been molested previously by her father? Then would it be IAC not to – would it have been ineffective for the lawyer not to interview the mother? If she said that I would have said that on the stand, again, Your Honor, we still have to have a showing that she would have disclosed that information prior to trial to counsel. The claim is that he was ineffective for failing to interview those particular witnesses prior to trial. And unless you have some positive showing that these witnesses would have, number one, talked to him, and number two, what they would have disclosed to him during that interview, he fails to carry his burden of proof. But if he testified, I really, really would have liked to have told him exactly what I thought, because my child was traumatized at the age of three. And that's why I was so upset and took her to the hospital when she came in and told me she had been molested one more time. If she had said that, if I understand Your Honor's question correctly, I just want to make sure, that she would have said that, yes, I would have told defense counsel, had he come to me ahead of trial, that my daughter had been molested previously. Even with that, Your Honor, I don't think that there's any showing of prejudice, because the mere fact that she may have been traumatized by a prior molestation in no way invalidates the testimony or calls into question her testimony about this particular molestation. And I would submit that it's really a two-edged sword, and that it could very well, in the eyes of a reasonable juror, just as easily say that this girl obviously knows what molestation is. It was a traumatizing effect in her life, and when an incident like that occurs to her a second time, that she darn well knows what she's talking about, and that it's not some sort of fabrication. With regard to the disclosure of Dr. O'Meara's identity, there was one question asked of Mr. Mustafa about him, that Dr. Glover was not the first psychologist you consulted. Immediately trial counsel was up. He objected. The objection was sustained. And then we also have a curative instruction given later by the judge that basically says that there is to be no insinuation of what the evidence might have been or the answer might have been on a question that was objected to and that there was an objection sustained. How do you deal with the issue that the counsel did not call the doctor, didn't, I guess, interview or call the doctor who checked off the box saying no penetration? Well, first, Your Honor, I would take issue with the claim that we have any positive proof in the record that Mr. Daley, the trial counsel, did not interview these other doctors. There simply is no proof. We don't know whether or not he interviewed them. That's correct, Your Honor. I mean, for all we can tell from the record, he might have called them up and they might have not been helpful or refused to talk to him or something like that? That's correct, Your Honor. We have no proof. There's no affidavit of Daley saying I did not call Dr. Isay or Dr. Isay. I did not call Dr. Isay for whatever reason. That's correct, Your Honor. And also we have no proof of what Dr. Say, TSAY, or Dr. Mackle would have said. What we do have is the testimony of Dr. Destler about a little bit about how the examination was accomplished at the emergency room when Nikki was brought in. And in her interview, Dr. Destler's interview, we find out that, in fact, Nikki discloses that there was penetration and so forth. We also have testimony to the effect that Dr. Say, I believe, had been on duty for at least 24 hours or approximately 24 hours at the time this examination took place. And I think any of us who have visited emergency rooms know that it's quite common for somebody who's, you know, in residency or an intern. It's getting into a speculative area. Yes, Your Honor. And that's exactly the problem. I'm not prepared to say that because the doctor was tired, the doctor made a mistake. I mean, the problem that I was having earlier and still have is the significance. In fact, there's nothing in the record. So it leaves it in this realm. And that's the problem, Your Honor. That's exactly the problem, Your Honor, is hit the nail right on the head in that there's no proof in the record. And it's not the State's burden on Federal habeas to prove its case. It comes in here with a presumptively valid conviction. The burden for overturning that conviction rests squarely on Petitioner, and he hasn't done it. And that raises the question of whether there was ineffective assistance of counsel, which is the key issue in this case. And he has not proved ineffective assistance of counsel, Your Honor. And that burden is squarely on Petitioner. You just said nothing in the record about Dr. Seay. That's correct, Your Honor. And this Court, I would submit, is not under Federal habeas law supposed to speculate. There's nothing on the habeas record. In other words, there's no affidavit of Dr. Seay on the habeas case saying if I'd been called earlier, here's what I would have said. That's correct, Your Honor. Or if I'd been interviewed, here's what I would have said. Or we don't even know if he would say I was interviewed or was not, right? That's correct, sir. We don't know what she would have said. She rather, yeah. So, okay. With regard to –  I want to get back to that. Yes, sir. This conviction that's contested, that appellant says was contested for years before this event and for years after, is it critical to the three strikes application? It was considered for the three strikes sentencing, yes, sir. We had some convictions not considered when the case was sent back for sentencing, but it was part of the decisional calculus. On the resentencing. Yes, sir. This one stays throughout, if I understand your question correctly, sir. Well, if that conviction were tossed out, would he have the same sentence? He would have to go back for a resentencing is my understanding of the posture of the case, yes, sir. I would submit to the court that Petitioner has failed to prove any of his allegations that either appellate or trial counsel were ineffective. I would rest my arguments about the other instances that have been alleged both for trial and appellate counsel on what is in my brief, and subject to any concerns of the court, I would simply ask that the district court's judgment be affirmed. Thank you, counsel. Let me ask you to comment on this one issue. Again, on the conviction. Yes, sir. We know that the court had fingerprints that linked Mustafa, I guess, to some prior convictions under a different name before he converted, right? Isn't that right? That's correct, sir. They were the fingerprint cards show the name Terry Matthews, which is. Now, do we know that those fingerprints apply to this other conviction that is disputed? No, sir. You know, let's. Is there any possibility it's a conviction of someone else with the same name? It's sort of a common name. The issue is that the abstract of judgment for the San Francisco conviction shows the name Carl Tyrone Matthews. There is a fingerprint card showing a PC-211, a robbery conviction or a robbery charge for San Francisco in 1984, and the name on that card is Terry Matthews. And that's what counsel's point is. He's saying, and I have to concede that there is no linkage between that fingerprint card and the abstract of judgment. I can't put one together. However, it doesn't matter again, Your Honor, and the reason for that is we have an admission under oath from Mr. Mustafa that he was convicted of robbery on 24 April 1984 in San Francisco County Superior Court, and that's exactly the crime that was alleged as I believe it's the fourth prior in the information that finally went to trial. So while it's an interesting academic point or evidentiary point in one respect, there is sufficient proof, and I'm sure that this Court has seen numerous occasions both from state as well as federal trial judges where they come to the right conclusion, which is exactly what happened in this case, but for the wrong reason. In terms of not citing, he doesn't cite to Mr. Mustafa's admission, although the prosecutor certainly argued that point to the trial judge in his little colloquy about finding the priors. He says that, well, I've got the abstracts and I've got the fingerprint cards from Exhibit 6 and the fingerprint cards from Exhibit 3. But there also is this other proof in the record, certainly sufficient proof to sustain the finding of true on this prior conviction. Is there a request for an evidentiary hearing on this issue? I'm sorry, Your Honor. I don't recall if it was specifically on this issue. I did not handle the case except at the very end in district court, but I believe that there was a general request for an evidentiary hearing. I'm not sure it was tied to any specific point. This conviction or to this issue. I'm not sure that there was a specific request for a hearing on whether this prior belonged to him. I don't believe so. I believe it was just to have a hearing in general on the entirety of the habeas petition, sir. I would, again, respectfully ask that this Court affirm the judgment of the district court. Thank you, counsel. Counsel, you went through your time, but why don't you take three minutes anyway? Thank you very much, Your Honor. I appreciate it. I'll be quick. First of all, I did also look up the excerpt record on the so-called admission. It is ER 56. The question is not whether Mr. Mustafa had prior robbery convictions. He had a number of prior convictions, which may or may not have been strikes, which may or may not have counted against him. But the question in a three strikes case is whether, and this is a question his sentence depended on, was whether the particular conviction that was charged in the indictment was his conviction. And there were no fingerprints in the record or before the trial court for Carl Terone Matthews. And, yes, it is critical that ---- Isn't it a fair inference, though? I mean, there isn't anything in the law that says without fingerprints, it can't count as a strike. The law is just that person has to have been convicted before. And if he's changing his name, it can be ---- You have various kinds of circumstantial evidence, including fingerprints. There is no evidence in the record that he used, that Carl Terone Matthews was his alias. In fact, we do have a transcript of Carl Terone Matthews' sentencing in which he averse under oath that that is his correct name. I guess I'd have more doubt if, in response to the admission on page 56, where he admits that he was convicted of robbery April 24, 1984, violation of 211 San Francisco, if you came up with somebody else who looks more likely to be Mustafa than the Carl Terone Matthews that was convicted that day of that crime in that place. The only evidence in the record was that Carl Terone Matthews was convicted of a crime on that date. There was no evidence tying Mr. Mustafa to Carl Terone Matthews. No, there is evidence tying Mustafa. There are two pieces of evidence. One, that a Carl Terone Matthews was convicted that date in that place of that crime. And the second piece of evidence is that Mustafa admits that he was admitted that he was convicted on that day in that place of that crime. Again, I can only go back to what I've said before, which is that he was not shown that conviction. He was not told that he was being asked to admit to Carl Terone Matthews' conviction. The question in the three strikes case is whether the convictions that were charged in the indictment were found reasonable. It has to show that he was convicted of the precise charge in the indictment. Yes. Let's assume that if we were to agree with you on that, then what's the result at this stage? He would have to go back to be resentenced. He would be a two-strike offender rather than a three-strike offender, which I don't know the exact reduction. Would there be an evidentiary hearing as to whether this third strike belonged to him or would he just be sentenced based on two strikes? Well, I don't know. I think that the trial is probably closed. I think the question would be, you know, what is the sentence for two strikes instead of three strikes defendant? Why isn't it his burden on habeas, just like everything else is his burden, to show us that, yeah, he was convicted April 24, 1984 of a 2-11 violation in San Francisco, but it's not the Carl Terone Matthews conviction that was used as his strike. Why doesn't he have to come forward with an affidavit saying, here's the court record, and I was convicted under the name Mustafa, and Carl Terone is a different guy, or something that would throw doubt on the evidence? The habeas in the district court was pro se. I wasn't a lawyer. He didn't have a lawyer. You don't get out of your obligation to prove by saying, I wasn't the lawyer. I understand that. Or he was pro se. He still got the burden. Yes. And he has produced the following evidence. He does have his own sworn declaration, which is part of his habeas petition, which says that I am not Carl Terone Matthews. He has the transcript. Yes. He has the transcript of Carl Terone Matthews' sentencing that shows that Carl Terone Matthews, saying under oath on that day that, you know, this is my true and correct name, and he has the fact that both the trial court and later the court of appeals and district court, trial court exclusively and the other two courts in part, relied on the fingerprint evidence to establish the link with Carl Terone Matthews. That all sounds like kind of a joke to me. I mean, sure, I wasn't Carl Terone Matthews, or I'm not Carl Terone Matthews. He isn't. He's changed his name to Mustafa. His religious conversion is subsequent to 1984. No. His original name, Your Honor, was Terence Matthews, and Matthews is a common last name. Terence Matthews, as contrasted with... Terrell. Terrell. Terrell. Yes. Okay. Thank you, Your Honor. Is there law, by the way, is there law in this issue of whether, if we were concerned that the record was inadequate to prove the third strike, alleged in this indictment, as to whether the result is he gets a two-strike sentence or whether the result is he gets a two-strike sentence, that there can be a further hearing about whether he is the one in the offense that was charged in this indictment? I'm not aware of any. My assumption, just based on my experience, is that I would assume it would go back for resentencing. But if there is a procedure, I'm not aware of it. Suppose if we just said it had to go back for resentencing, then the district court would have to assess that. The state trial court. Yeah. May I ask a question? Sure. As I understand it, he had about six prior felonies. He was alleged. Alleged. Yes. In the indictment, were only three alleged? I think that there were a number of different indictments and informations as this case progressed over several years. And I believe at one point he was charged with six or seven priors. I don't know whether they all would have countered the strikes. I know that the state only chose to present evidence on three of those priors. All right. Thank you. Where is his affidavit that we should rely on for it not being the right person on that case? In his habeas petition. I don't remember the exact language, but the habeas petition is under oath. I just want to look at the language in the excerpt.  Let me try and find where that is. If I have it in 14 or so, but I don't know exactly. Yeah. Excerpts to pro se petition begin at ER 214. Let's see what it would have said there. Apparently not. Let's see. Right at the beginning. And that's California State Supreme Court. Your Honor, I am not certain if that is or is not in the excerpt's record. We can check the record, but I just posted a 188, 198, but. I'm sorry, Your Honor. Your Honor, I will submit, I will either submit the excerpt of the record page, or I will report a copy. We'll ask the court if we need it. Okay. Okay. But habeas petitions are under oath. Thank you, counsel. Mostafa v. Newland is submitted. Try 545. Sorry? 545. 545. Thanks. Next is United States v. Tanner. Thank you, counsel.
judges: D.W. Nelson, Kleinfeld, Gould